**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | |
| | Chapter 11 |
| FREEDOM FOREVER LLC, | |
| | Case No. 26-10522 (BLS) |
| Debtor.[1] | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING DEBTOR TO (A) CONTINUE ITS EXISTING CASH**
**MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS**
**RELATED THERETO, (C) MAINTAIN ITS BANK ACCOUNTS AND EXISTING**
**BUSINESS FORMS, AND (D) IMPLEMENT CHANGES TO THE EXISTING CASH**
**MANAGEMENT SYSTEM AS NECESSARY, (II) EXTENDING THE TIME TO**
**COMPLY WITH THE REQUIREMENTS OF 11 U.S.C. § 345(b) AND THE U.S.**
**TRUSTEE'S OPERATING GUIDELINES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") respectfully

moves (the "Motion") as follows:

**RELIEF REQUESTED**

1.      The Debtor requests entry of interim and final orders, substantially in the

form attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and

together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the

Debtor to (a) continue its existing cash management system, (b) honor certain prepetition

obligations related thereto, (c) maintain its existing bank accounts and business forms, and

(d) implement any changes to the existing cash management system as the Debtor deems necessary

or appropriate, including, without limitation, opening new bank accounts or closing existing bank

accounts; (ii) extending the Debtor's time to comply with the requirements of section 345(b) of

the Bankruptcy Code and the operating guidelines (the "U.S. Trustee Guidelines") established by

---

[1]     The Debtor in this case, along with the last four digits of its's federal EIN, is Freedom Forever LLC (8857).  The
Debtor's mailing address is 43445 Business Park Drive Suite 110 Temecula, CA.

the Office of the United States Trustee (the "U.S. Trustee") on an interim basis; and (iii) granting any related relief that is necessary to carry out the foregoing or continued operation of the cash management system, or is otherwise appropriate under the circumstances.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The Debtor consents pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.     The statutory bases for the relief requested herein are sections 105(a), 345(b) and 363(c)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 2015, 6003(a) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2015-1 and 9013-1(m).

**BACKGROUND**

5.     The Debtor is one of the nation's largest residential solar installation enterprises—building, staffing, and scaling a comprehensive platform that serves homeowners across the country.

6.     On April 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtor is operating

its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in this case.

## THE CASH MANAGEMENT SYSTEM

7.      The Debtor maintains a cash management system (the "Cash Management System") to collect, transfer, manage and disburse funds generated and used in its operations.  The Cash Management System is comprised of 9 bank accounts (collectively, along with any bank accounts the Debtor may open in the ordinary course of business, the "Bank Accounts"), maintained at two banks: Bank of America ("BoA") and City National Bank ("CNB" and together with BoA, the "Banks").

8.      The Cash Management System is managed by the Debtor out of its office in Temecula, CA, and all funds in the Bank Accounts are denominated and held in U.S. Dollars. The Debtor maintains daily oversight of the Cash Management System and implements cash management controls for entering, processing, and releasing funds.  Additionally, the Debtor regularly reconciles books and records to ensure that all transfers are accounted for properly.

## I.    The Bank Accounts

9.    A schedule of the Bank Accounts, including the last four digits of each Bank Account number and the Bank at which the account is held, is attached as **Exhibit 1** to each of the Proposed Orders.  The following table summarizes the nature and purposes of the Bank Accounts:

| Account(s) | Description of Account(s) |
|---|---|
| Operating Account<br><br>Account ending in 7890 | The Debtor maintains an account at CNB (the "CNB Operating Account") in the name of Freedom Forever LLC.   The CNB Operating Account is used to accept a variety of payments, including deposits from finance companies and funding from installations.  The balance of the Operating Account as of the Petition Date is approximately $127,245.61. |
| Deposit Account<br><br>Account ending in 4870 | The Debtor maintains an account at CNB (the "Deposit Account") in the name of Freedom Forever LLC.  The Deposit Account is used to accept a variety of payments, including Homeowner deposits, Paykeeper deposits and Project Solar deposits.  Funds routinely get transferred from the Deposit Account to the CNB Operating Account.  The balance of the Deposit Account as of the Petition Date is approximately $10,279.40. |
| Additional Accounts<br><br>Account ending in 1185, 4651, and 4686 | The Debtor maintains three accounts (each, an "Additional Account") at CNB, in the name of Freedom Forever LLC.  The balance of the Additional Account ending in 1185 was $1,850,000.00 as of the Petition Date.<br><br>The balance of the Additional Account ending in 4651 was $15,000.00 as of the Petition Date.<br><br>The balance of the Additional Account ending in 4686 was $15,000.00 as of the Petition Date. |
| CNB Payroll Account<br><br>Account ending in 0689 | The Debtor maintains an account at CNB (the "Payroll Account") in the name of Freedom Forever LLC.  The balance of the Payroll Account as of the Petition Date is approximately $0. |
| Operating Account<br><br>Account ending in 3017 | The Debtor maintains an account at BoA (the "BoA Operating Account") in the name of Freedom Forever LLC.  Transfers are made to and from the CNB Operating Account to the BoA Operating Account through wire and check.  The balance of the BoA Operating Account as of the Petition Date is approximately $0. |
| Permit Account<br><br>Account ending in 2738 | The Debtor maintains an account at BoA (the "Permit Account") in the name of Freedom Forever LLC.  The balance of the Permit Account as of the Petition Date is approximately $0. |

4

| BoA Payroll Account | The Debtor maintains an account at BoA (the "Payroll Account") in the name of Freedom Forever LLC.  The balance of the Payroll Account as of the Petition Date is approximately $2,961,561.85. |
|---|---|
| Account ending in 3020 | |

## II. Service Charges.

10.    In the ordinary course of business, the Banks charge, and the Debtor pays, honors or allows deductions from the appropriate account, certain service charges, fees and other costs and expenses associated with maintaining the accounts in accordance with the applicable agreements or schedules of fees governing the Bank Accounts (collectively, the "Service Charges").

11.    In the 12-month period before the Petition Date, the Debtor paid an average of approximately $28,000.00 per month in Service Charges.[2]  The Debtor estimates that it is current on its Service Charges outstanding as of the Petition Date because the Service Charges are assessed monthly and deducted directly from the Bank Accounts.  During the Interim Period, the Debtor estimates that no more than $28,000.00 in Service Charges will become due.  Accordingly, the Debtor requests authority, but not direction, to honor and pay prepetition Service Charges in an amount not to exceed $28,000.00.

## III. Funds Flow within the Cash Management System

12.    Historically, the Cash Management System generally facilitated the following principal cash management functions: (a) cash collection; disbursements to fund the Debtor's operations; and intercompany transfers.  The Debtor primarily used City National Bank for its cash management, and funding is deposited into the CNB Operating Account and Deposit Account.  All subsidiary state entity accounts are maintained as zero-balance accounts, and funds

---

[2]    During the last six months before the Petition Date, the Debtor has paid approximately $75,000.00 to $100,000.00 in service charges, including overdraft fees.  The Debtor's historical monthly average cost of service charges total to $28,000.00 between both Banks.

transfer from the CNB Operating Account to cover state subsidiary disbursements.  Transfers are also made between the CNB Operating Account and the BoA Operating Account.  A cash flow diagram of the Debtor's Bank Accounts is attached to each Proposed Order at **Exhibit 2**.

13.     Maintaining certain processes of the prepetition Cash Management System is critical to the Debtor's ability to preserve the value of its assets.  Specifically, the Debtor intends to utilize its existing Cash Management System throughout the Chapter 11 Case in the ordinary course of business in accordance with historical practices.  The existing Cash Management System is crucial for managing the Debtor's business processes throughout the Chapter 11 case, including processing payroll and paying key parties in interest, such as critical vendors, which is necessary to preserving and maximizing the value of the Debtor's estate.

IV.     **Intercompany Transactions**

14.     The Debtor and its non-Debtor affiliates (the "Non-Debtor Affiliates") form a single, integrated enterprise facilitating the collection, concentration, and disbursement of funds in the ordinary course of business.  As part of that integrated enterprise, the Debtor engages in business relationships with its non-debtor affiliates, including making payments or providing services for the benefit of the Debtor (the "Intercompany Transactions").[3]  These Intercompany Transactions include transfers between the Debtor and Non-Debtor Affiliates.

15.     The Intercompany Transactions are a critical component of the Debtor's operations and are integral to the ability of the Debtor and its Non-Debtor affiliates to process payrolls, satisfy obligations to vendors, and otherwise facilitate the Debtor's daily operations.  The

---

[3]     To the extent that there is any outstanding prepetition transactions related to the Intercompany Transactions not described herein, the Debtor seeks authority to continue such transactions out of abundance of caution.

Intercompany Transactions are historically traceable, and the Debtor tracks all funds transfers relating to the Intercompany Transactions in its accounting system.

16.    The Debtor would be unduly burdened, both financially and logistically, if the Debtor was required to halt Intercompany Transactions or otherwise make material changes to the Cash Management System.   Accordingly, the Debtor seeks authority to continue the Intercompany Transactions in the ordinary course of business consistent with past practice and to grant administrative expense status to Non-Debtor Affiliates as a result of Intercompany Transactions.

## V.    Existing Business Forms

17.    The Debtor uses a variety of business forms in the ordinary course of business, including, among others, checks, invoices and letterhead (the "Business Forms").   To minimize expenses and disruption, the Debtor seeks authority to continue to use all Business Forms in substantially the form used immediately before the Petition Date, without reference to the Debtor's status as a debtor in possession.   The Debtor will communicate with the various vendors and counterparties with whom the Debtor conducts business to notify them of the commencement of this case, which the Debtor believes will provide adequate notice of the Debtor's status as a debtor in possession.   In accordance with Local Rule 2015-1(a), to the extent the Debtor exhausts its existing supply of CNB Operating Account and BoA Operating Account checks during this case and requires new checks, the Debtor will order checks with a notation indicating the designation "debtor in possession" and the case number of this case.

**BASIS FOR RELIEF**

**I.    The Court should approve the Debtor's request to continue to utilize its Cash Management System, including authorizing continued use of existing Bank Accounts and implementing changes to the Cash Management System.**

18.    The U.S. Trustee Guidelines require a debtor in possession to, among other things:

a.    establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

b.    close all existing bank accounts and open new debtor in possession accounts;

c.    maintain a separate debtor in possession account for cash collateral; and

d.    obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.

19.    These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.  Considering, however, that the Debtor's business and financial affairs are complex and require the collection, disbursement and movement of funds through its Bank Accounts, enforcement of the provisions of the U.S. Trustee Guidelines during this chapter 11 case would severely disrupt the Debtor's operations.  Accordingly, the Debtor respectfully requests that the Court allow it to operate each of its Bank Accounts as they were maintained in the ordinary course of business before the Petition Date.

20.    Continuing the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363.

8

Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

21. Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and certain of its subsidiaries "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id*. at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id*. at 621. Indeed, in large chapter 11 cases, bankruptcy courts in this district routinely grant chapter 11 debtors similar authority to continue using existing cash management systems.

22.     Here, the Debtor utilizes the Cash Management System in its current form as part of its ordinary and usual business practices, and as such, the Debtor believes the continued use of the Cash Management System falls within the purview of ordinary course transactions permitted under section 363(c)(1) of the Bankruptcy Code.  Moreover, appropriate circumstances exist for the Court to authorize the Debtor's continued use of the Cash Management System under sections 363(b)(1) and 105(a) of the Bankruptcy Code.  Furthermore, the Debtor has in place internal controls and procedures to prohibit payments on account of prepetition debts within its Cash Management System and Bank Accounts.  Disrupting the current Cash Management System and forcing the Debtor to create new bank accounts would unnecessarily complicate such controls and procedures.  In light of existing protective measures, the Debtor submits that maintaining the Cash Management System will benefit parties in interest and is in the best interests of the Debtor's estate and creditors.

23.     Additionally, the relief requested in this Motion will help minimize any disruption in the Debtor's business operations during this chapter 11 case and preserve the value of the Debtor's estate.  Indeed, any disruptions in the Cash Management System could lead to delays in satisfying the Debtor's obligations to its vendors and suppliers and meeting the demands of customers.  To avoid the potential erosion of value that could ensue from any such interruptions in the Debtor's ordinary course business operations, the Debtor believes it is imperative that it be authorized to continue the Cash Management System and use of the Bank Accounts.

24.     Strict adherence to the U.S. Trustee Guidelines would be burdensome to the Debtor and its management, and reduce efficiencies and cause unnecessary expense.  The delays that would result from opening the new accounts and revising cash management procedures would

disrupt the Debtor's business operations at this critical time, have little or no benefit to the Debtor's estate, and erode the value of the Debtor's enterprise to the detriment of all stakeholders.

25.     For these reasons, the Debtor should be allowed to continue using the Cash Management System and Bank Accounts consistent with historical practice.  The Debtor further requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  In the ordinary course of business, the Debtor conducts transactions through ACH, wire transfer and other similar methods.  If the Debtor's ability to conduct transactions according to historical practice is impaired, the Debtor may be unable to timely perform under certain contracts, the Debtor could incur penalties and fines with taxing authorities, its business operations may be unnecessarily disrupted, and its estate will incur additional costs.  Accordingly, the Debtor submits that it should be allowed to continue utilizing all existing payment methods.

**II.     The Court should authorize the Debtor to continue using its existing Business Forms.**

26.     The U.S. Trustee Guidelines require a debtor in possession to immediately obtain new checks printed with the designation "debtor in possession" and the corresponding number of the lead bankruptcy case.  To avoid unnecessary expense and further disruption of the Cash Management System, the Debtor requests authorization to continue to use its existing Business Forms substantially in the forms existing immediately before the Petition Date, without reference to its status as a debtor in possession.  The Debtor will communicate with the various vendors and counterparties with whom the Debtor conducts business to notify them of the commencement of this case, which the Debtor believes will provide adequate notice of the Debtor's status as a debtor in possession.  Furthermore, in accordance with Local Rule 2015-1(a),

11

to the extent the Debtor exhausts its existing supply of CNB Operating Account and BoA Operating Account checks during this case and requires new checks, the Debtor will order checks with a notation indicating the designation "debtor in possession" and the case number of this case. In light of these steps, the Debtor submits that parties in interest will not be prejudiced if the Debtor is authorized to continue to use its Business Forms substantially in the form existing immediately before the Petition Date.

**III.     The Court should extend the Debtor's time to comply with the requirements of section 345(b) of the Bankruptcy Code on an interim basis.**

27.     Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the state, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  While section 345(a) requires that with respect to deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the Unites States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee-approved corporate surety, section 345(b) permits the court to dispense with this undertaking "for cause."  11 U.S.C. § 345(b); *see also In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting the 1994 amendments to the Bankruptcy Code which explained that the new amendments to the Code would allow the courts to approve investments other than those permitted by section 345(b) for just cause).

28.     In *Service Merchandise*, the court identified the following factors for determining whether cause to waive the requirements of section 345(b) exists: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business operations; (iii) the amount of investments involved; (iv) the bank ratings of the financial institutions where the debtor's funds

are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business for insuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor of current practices; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case. *Serv. Merch.*, 240 B.R. at 896–97.

29.    With respect to the Bank Accounts held at CNB and BoA, the Debtor believes it is in compliance with the requirements of section 345(b) because each is a U.S. Trustee-approved depository institution.  However, the Debtor requests, out of an abundance of caution, (i) a 45-day extension of time to comply with the deposit and investment requirements of section 345(b) without prejudice to the right to seek a further extension, (ii) that CNB and BoA be authorized and directed to accept and hold such funds at the Debtor's direction, and (iii) that CNB and BoA be authorized and directed to honor the Debtor's directions with respect to the opening and closing of any Bank Account.

30.    In light of the foregoing, the Debtor submits that cause exists for an extension of time to comply with the requirements of Bankruptcy Code section 345(b).  In accordance with Local Rule 2015-1, the Debtor requests a 45-day extension of time to comply with the section 345 requirements.

**IV.    The Court should authorize the Banks to continue to maintain, service and administer the Debtor's Bank Accounts in the ordinary course of business.**

31.    The Debtor submits that parties in interest will not be prejudiced or injured by the Debtor's maintenance of its Bank Accounts in the ordinary course of business.  As discussed above, the Debtor strongly believes that replacing the Bank Accounts with new accounts pursuant

to the U.S. Trustee Guidelines would fruitlessly disrupt its operations and derail the Debtor's efforts to preserve and maximize the value of its estates.

32.     To further implement continued use of its existing Cash Management System and Bank Accounts, the Debtor respectfully requests that the Court authorize and direct the Banks to: (i) continue to maintain, service and administer the Bank Accounts as accounts of the Debtor as a debtor in possession and provide related treasury, account and cash management services, all without interruption and in the ordinary course of business; (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn on the Bank Accounts; *provided*, *however*, that any check, draft or other notification that the Debtor advises the Banks to have been drawn, issued or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court; (iii) accept and honor all representations from the Debtor as to which checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items are dated before or after the Petition Date; and (iv) debit or charge the Bank Accounts for all undisputed bank fees, whether arising before, on or after the Petition Date.

33.     In addition, to protect the Banks, the Debtor also requests that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of the Motion: (a) at the direction of the Debtor; or (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtor or to its estate on account of such prepetition check or other item honored postpetition.

14

The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

34. The Debtor represents that if the relief requested herein is granted, it will implement appropriate mechanisms to ensure that no payments will be made on account of debts incurred before the Petition Date (other than those authorized by the Court). To prevent the inadvertent, unauthorized payment of prepetition claims, the Debtor will work closely with the Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without Court approval.

**V.      The Court should authorize the payment of all undisputed Service Charges.**

35. Payment of the prepetition Service Charges is in the best interests of the Debtor and all parties in interest in this chapter 11 case, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtor's receipt of funds is not delayed. Payment of prepetition Service Charges will not prejudice any parties in interest. Indeed, because the Banks likely have setoff rights for the Service Charges, payment of prepetition Service Charges should not alter the rights of unsecured creditors in this chapter 11 case. Even if such Service Charges were unsecured in whole or part, the cost of any disruption or delay in being able to accept, process and receive credit card payments, or being able to utilize the Cash Management System far outweighs the cost of paying the Service Charges and justifies the payment of the fees under the "doctrine of necessity."

36. Accordingly, the Debtor requests authority, but not direction, to honor and pay all undisputed Service Charges, including prepetition Service Charges in an amount not to exceed $28,000.00, and to allow the Banks to debit, charge or deduct, as applicable, such undisputed amounts in the ordinary course of business without interruption or delay.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

37.    Bankruptcy Rule 6003 empowers the Court to issue an order, within 21 days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "need to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a)(2).  For the reasons discussed above, immediate and irreparable harm would result if the relief requested herein were not granted. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**WAIVER OF BANKRUPTCY RULES 6004(a) and 6004(h)**

38.    To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a)(1) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise for all of the reasons described above.

**RESERVATION OF RIGHTS**

39.    Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtor that exists against any entity; (v) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; (vi) a waiver of limitation of the Debtor's rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtor that any lien acknowledged or satisfied under this Motion is valid, and the Debtor expressly reserves and preserves its right to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

**NOTICE**

40.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee, Attn: Jonathan Lipshie (jon.lipshie@usdoj.gov); (b) the Internal Revenue Service; (c) the parties included on the Debtor's list of its thirty (30) largest unsecured creditors; (d) the United States Attorney's Office for the District of Delaware; (e) the Securities and Exchange Commission; (f) the Banks; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking first-day relief, the Debtor will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtor respectfully submits that no further notice of this Motion is required under the circumstances.

17

## CONCLUSION

WHEREFORE the Debtor respectfully requests that the Court enter the Proposed Orders granting the relief requested in this Motion, and such other and further relief as the Court may deem just and appropriate.

Dated: April 16, 2026
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Brianna N. V. Turner*
Curtis S. Miller (No. 4583)
Andrew R. Remming (No. 5120)
Jonathan M. Weyand (No. 6959)
Brianna N. V. Turner (No. 7468)
Autumn K. Mueller (No. 7633)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Email: cmiller@morrisnichols.com
     aremming@morrisnichols.com
     aremming@morrisnichols.com
     jweyand@morrisnichols.com
     bturner@morrisnichols.com
     amueller@morrisnichols.com

*Proposed Counsel to the Debtor and Debtor in Possession*